# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE: BEATRICE TUMBA aka BEATRICE L. TUMBA,<br><br>*Debtor*<br><br>―――――――――――――――――――――――<br><br>BEATRICE TUMBA aka BEATRICE L. TUMBA,<br><br>*Appellee*,<br><br>         v.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR RESIDENTIAL ASSET SECURITIES CORPORATION, HOME EQUITY MORTGAGE ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2006-EMX2,<br><br>*Appellant*. | No. 3:20cv832 (MPS) |

## MEMORANDUM OF DECISION

Appellant/creditor U.S. Bank National Association, as Trustee, for Residential Asset Securities Corporation, Home Equity Mortgage Asset-Backed Pass-Through Certificates, Series 2006-EMX2 ("U.S. Bank") appeals the Bankruptcy Court's order denying its motion for relief from the automatic stay in the bankruptcy case of appellee/debtor Beatrice Tumba ("Mrs. Tumba"). U.S. Bank seeks to obtain immediate possession of real estate Mrs. Tumba inherited from her deceased husband and which was the subject of a foreclosure action brought by U.S. Bank in state court. The Bankruptcy Court denied the motion because it determined that Mrs. Tumba was a "mortgagor" for purposes of Conn. Gen. Stat. § 49-15 and therefore entitled to the suspension of foreclosure proceedings that statute affords mortgagors who file for bankruptcy. U.S. Bank argues that the Bankruptcy Court erred in so concluding. I agree.

**I.     FACTS**

The facts are not in dispute, and U.S. Bank challenges only the legal conclusions of the

Bankruptcy Court.  In December 2005, Amisi Tumba, Mrs. Tumba's husband, executed a mortgage (the "Mortgage") on a residence located on 258 Salem Street, Bridgeport, Connecticut ("Property").  Under the Mortgage, he pledged the Property as security for a loan extended by U.S. Bank's predecessor.  Mrs. Tumba is not a party or signatory to the Mortgage or the underlying note and held no interest in the Property when the Mortgage was executed.  Mr. Tumba died intestate in June 2012.  As his surviving spouse, Mrs. Tumba inherited Mr. Tumba's fee simple interest in the Property by a certificate of devise in probate proceedings.  After Mr. Tumba's death, the debt secured by the Mortgage fell into default.  In July 2018, U.S. Bank commenced a foreclosure action in state court and named Mrs. Tumba as a defendant, among others.  On September 9, 2019, the state court entered a judgment of strict foreclosure in favor of U.S. Bank and assigned a law day for the equity of redemption of November 12, 2019.  Before the law day passed, Mrs. Tumba filed a petition under Chapter 11 in U.S. Bankruptcy Court.  *See In re: Beatrice Tumba*, No. 19-51504 (Bankr. D. Conn.).  On February 7, 2020, U.S. Bank filed a motion in Mrs. Tumba's bankruptcy case requesting relief from the automatic stay under 11 U.S.C. § 362(d)(2).[1]  ECF No. 45.  As grounds, U.S. Bank stated that it had obtained a judgment of strict foreclosure with regard to the Property and that the law days had passed without redemption, meaning that Mrs. Tumba no longer had any equitable interest in the Property.  In support, it submitted a certificate of foreclosure

---

[1] 11 U.S.C. § 362(d) provides in pertinent part:
>    (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .
>    (2) with respect to a stay of an act against property under subsection (a) of this section, if--
>    (A) the debtor does not have an equity in such property; and
>    (B) such property is not necessary to an effective reorganization . . . .

recorded on the land records indicating that absolute title passed to it on January 16, 2020.[2] ECF No. 57-1. Mrs. Tumba objected and argued that U.S. Bank's motion should be denied because as a bankruptcy debtor, she was entitled to the automatic reopening of the strict foreclosure judgment and the benefit of the suspension of the law days Conn. Gen. Stat. § 49-15(b) affords to a "mortgagor" who has filed for bankruptcy.[3] ECF No. 53. After a hearing on June 2, 2020, the Bankruptcy Court agreed with Mrs. Tumba and denied U.S. Bank's motion. ECF No. 76. Specifically, the Bankruptcy Court determined that Mrs. Tumba was a "mortgagor" under § 49-15(b) and therefore entitled to the automatic opening of the strict foreclosure judgment and the suspension of the running of the law days upon the filing of her bankruptcy petition. As a result, the Bankruptcy Court concluded that absolute title had not yet vested in U.S. Bank and that Mrs. Tumba retained an equitable right of redemption in the Property. It therefore denied the motion for relief from the automatic stay. This appeal followed.

## II. STANDARD OF REVIEW

"A bankruptcy court has discretion in determining whether to lift the automatic stay." *In*

---

[2] U.S. Bank acknowledges that its first Certificate of Foreclosure noting a vesting date of November 15, 2019 was incorrect because it did not take into consideration the sixty-day extension of the law day provided by 11 U.S.C. § 108(b)(2). ECF No. 45-1. It subsequently filed a corrected certificate of foreclosure that contained the correct date. ECF No. 57-1.

[3] Conn. Gen. Stat. § 49-15(b) provides:
> Upon the filing of a bankruptcy petition by a mortgagor under Title 11 of the United States Code, . . . any judgment against the mortgagor foreclosing the title to real estate by strict foreclosure shall be opened automatically without action by any party or the court, provided, the provisions of such judgment, other than the establishment of law days, shall not be set aside under this subsection, provided no such judgment shall be opened after the title has become absolute in any encumbrancer or the mortgagee, or any person claiming under such encumbrancer or mortgagee. The mortgagor shall file a copy of the bankruptcy petition, or an affidavit setting forth the date the bankruptcy petition was filed, with the clerk of the court in which the foreclosure matter is pending. Upon the termination of the automatic stay authorized pursuant to 11 USC [§] 362, the mortgagor shall file with such clerk an affidavit setting forth the date the stay was terminated.

*re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997). This Court reviews the Bankruptcy Court's denial of U.S. Bank's motion for abuse of discretion. *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). "A court abuses its discretion when its decision (1) rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." *In re: All Phase Steel Works, LLC,* No. 3:16CV844(JAM), 2016 WL 6208252, at *2 (D. Conn. Oct. 24, 2016). Further, this court reviews *de novo* the Bankruptcy Court's interpretation of a statute. *In re Boodrow*, 126 F.3d at 47.

## III.   DISCUSSION

The issue presented is whether Mrs. Tumba, who inherited the Property after her husband died but is not a party to the Mortgage, is a "mortgagor" under § 49-15(b). For the reasons set forth below, I conclude that she is not.

The Connecticut General Assembly has adopted a "plain meaning rule" to guide courts in interpreting Connecticut statutes:

> The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered.

Conn. Gen. Stat. § 1-2z. *See also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 165 (2d Cir. 2014) ("[T]he starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof.") "It is a cardinal rule of statutory construction that statutory words and phrases are to be given their ordinary meaning in accordance with the commonly approved usage of the language." *Varley v. First Student, Inc.*, 158 Conn. App. 482, 497 (2015); *see also* Conn. Gen. Stat. § 1–1(a)

4

("[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language").

Section 49-15(b) provides in pertinent part that

[u]pon the filing of a bankruptcy petition by a mortgagor under Title 11 of the United States Code, . . . any judgment against the mortgagor foreclosing the title to real estate by strict foreclosure shall be opened automatically without action by any party or the court, provided, the provisions of such judgment, other than the establishment of law days, shall not be set aside under this subsection, provided no such judgment shall be opened after the title has become absolute in any encumbrancer or the mortgagee, or any person claiming under such encumbrancer or mortgagee. The mortgagor shall file a copy of the bankruptcy petition, or an affidavit setting forth the date the bankruptcy petition was filed, with the clerk of the court in which the foreclosure matter is pending. Upon the termination of the automatic stay authorized pursuant to 11 USC [§] 362, the mortgagor shall file with such clerk an affidavit setting forth the date the stay was terminated.

Although the statute does not define "mortgagor," the term has a common, well-established meaning. A mortgagor is "[s]omeone who mortgages property; the mortgage-debtor, or borrower." *Black's Law Dictionary* 1214 (11th ed. 2019); *see also Webster's Third New International Dictionary* 1472 (2002) (defining mortgagor as "a person who gives a mortgage on his property as security for a loan he receives or other obligation"); *Oxford English Dictionary Online* http://oed.com (last visited Sept. 28, 2021) (defining "mortgagor" as "[a] person who mortgages property as a security for debt; the borrower in a mortgage"). It is undisputed that Mrs. Tumba did not give a mortgage on the Property as security for a loan she received.

The Connecticut General Assembly's adoption of more expansive definitions of "mortgagor" in other, nearby mortgage-related statutes reinforces the point that it intended for the ordinary meaning of the term to apply in § 49-15(b). These other definitions, including one relied on by Mrs. Tumba, go beyond the term's ordinary meaning but are explicitly limited in application to specific statutes that do not include § 49-15. For example, Mrs. Tumba points to the definition set forth in Conn. Gen. Stat. § 49-31k(1) as support for her argument that she is a "mortgagor"

5

because that definition encompasses a successor in interest to the property within the scope of "mortgagor."[4] ECF No. 16 at 8-9.  But the application of that definition is expressly confined to "sections 49-31l to 49-31o, inclusive, and section 49-31s," which deal with mediation in foreclosure cases; by its own terms, therefore, that definition does not apply to section 49-15(b). *See also* § 49-24a (defining mortgagor "for purposes of a foreclosure by market sale in accordance with this section and sections 49-24b to 49-24g, inclusive"); § 49-30p (defining mortgagor for purposes of "sections 49-30q to 49-30w, inclusive," which deal with "underwater mortgages"). The Legislature's express limitation of the application of these alternative definitions of "mortgagor" is an indication that it deliberately chose *not* to have those definitions apply beyond the prescribed statutes.  As U.S. Bank correctly notes, these other definitions suggest that the Legislature deemed it necessary to define "mortgagor" only when it wanted to change the term from its ordinary meaning.  The absence of any such definition in Section 49-15 confirms that, in that provision, the Legislature intended the ordinary meaning of the term to apply.

Mrs. Tumba urges that the legislature history of Section 49-15(b) supports her position that she is a mortgagor, notwithstanding that she did not sign the Mortgage or the note.  ECF No. 16 at 9.  Because the term "mortgagor" is not ambiguous, however, I may not consider the legislative

---

[4] Conn. Gen. Stat. 49-31k provides in pertinent part:
> (1) "Mortgagor" means: (A) The owner-occupant of one-to-four family residential real property located in this state, which is the primary residence of such owner-occupant, who is also the borrower under a mortgage encumbering such residential real property, or if not the borrower under such a mortgage, is a permitted successor-in-interest, except an heir or occupying nonowner of a property encumbered by a reverse annuity mortgage, . . . .
> (9) "Permitted successor-in-interest" means a person who is a defendant in a foreclosure action with a return date on or after October 1, 2015, and either (A) the former spouse of a decedent-mortgagor, who acquired sole title to the residential real property by virtue of a transfer from the decedent-mortgagor's estate or by virtue of the death of the decedent-mortgagor where title was held as joint tenants or tenants in the entirety . . . .

6

history of Section 49-15(b) in construing the statute.  *See* Conn. Gen. Stat. § 1-2z; *see also Williams v. Foley,* No. 3:15CV1324, 2016 WL 4497746, at *6 n.1 (D. Conn. Aug. 25, 2016), *aff'd sub nom. Williams v. Riley*, 698 F. App'x 13 (2d Cir. 2017).  In any event, the legislative history is inconclusive.  The statute was amended in response to a Second Circuit case, *In re Canney*, 284 F.3d 362 (2d Cir. 2002), which held that the automatic stay provisions in 11 U.S.C. § 362 did not apply to toll the running of the equity of redemption period during which a mortgagor could redeem his property following the entry of a judgment of strict foreclosure under Vermont law.  Mrs. Tumba cites a floor statement by Representative Hamzy, who, describing the *Canney* case, stated "The U.S. Court of Appeals, in a decision from a Vermont case ruled that whenever a debtor filed a Chapter 13 [bankruptcy petition], after the judgment and before the law day, the only remedy that debtor would have would [be] to redeem the property…. [B]efore that decision was handed down, it was common practice in Connecticut and Vermont that if a debtor filed a Chapter 13 bankruptcy before the law day, that they had a right to reinstate the mortgage.  What this amendment does is puts us back in the same position that we were in before the U.S. Court of Appeals' decision ….."  45 Conn. Gen. Assemb. H. Proc. 4158-59 (2002) (statement of Rep. William Hamzy).  This statement refers to a "debtor," rather than a "mortgagor," and Mrs. Tumba is certainly a bankruptcy debtor.  But the *Canney* decision to which the statement refers involved a bankruptcy debtor who was also a mortgagor, which Mrs. Tumba is not, and if the intent of the amendment was to abrogate the *Canney* decision, as the statement suggests, then drafting the statute only to apply to a "mortgagor" in its ordinary sense would accomplish that result, *i.e.*, such a statute would have changed the result in the *Canney* case.  It simply is not clear if Representative Hamzy meant something more by using the term "debtor," – *i.e.*, whether he was contemplating a situation like the one here, where the bankruptcy debtor is not the person who gave the mortgage.

7

It is even less clear if his brief, somewhat vague statement is a reliable indicator of the General Assembly's intent in adopting the amendment. As a result, even if I could rely on the legislative history, it would not help Mrs. Tumba.

Mrs. Tumba further argues that Section 49-15 is "remedial" and as such, must be construed broadly. ECF No. 16 at 10. She cites no authority for this argument, but it misses the mark in any event because a court may not ignore the plain meaning of a statute to further its perceived underlying remedial policy. *See Peabody N.E., Inc. v. Dept. of Transp.*, 250 Conn. 105, 124-25 (1999)("We see no more reason today to ignore the plain language of the statute and to defer to the remedial nature of the statute than we did then."); *Bell & Zajicek, Inc. v. Heyward Robinson Co.*, 23 Conn. Supp. 296, 298 (Conn. Super.Ct. 1962)("While Section 49-34 is to be construed so as to reasonably and fairly carry out its remedial intent, the plain meaning of the language of the statute cannot be ignored.") (internal citations omitted).

Mrs. Tumba also argues that the Mortgage itself supports her interpretation. She contends that under the terms of the Mortgage, she is a "successor in interest," which the Mortgage defines as "any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument. . . ." ECF No. 16 at 11. Mrs. Tumba maintains that as a successor in interest, she "legally steps into the shoes of the original mortgagor," and is therefore a "mortgagor" for purposes of § 49-15(b). *Id.* But the Mortgage makes clear that none of its obligations, and none of its benefits, pass to any successor in interest unless the bank approves the transaction in writing - and Mrs. Tumba does not suggest that that occurred here. *See In re: Beatrice Tumba*, No. 19-51504, ECF No. 57-2, ¶ 13 ("any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument.") There

is no evidence in the record that Mrs. Tumba succeeded to her husband's interest in, or obligations under, the Mortgage. So even assuming one could become a "mortgagor" within the meaning of § 49-15(b) by assuming the interest in and obligations under a mortgage, I would still have to conclude on this record that Mrs. Tumba did not do so.

Because Mrs. Tumba is not a "mortgagor" within the meaning of § 49-15(b), the protection afforded by § 49-15(b) against the running of the period before and after the law day did not apply to her when she filed her bankruptcy petition. As noted, *Canney* held that the automatic stay of 11 U.S.C. § 362 did not apply to stay the running of the period following entry of a judgment of strict foreclosure in a Vermont court but before and after passage of the law day; and *Provident Bank v. Lewitt*, 84 Conn. App. 204, 207 (2004) made clear that the reasoning of *Canney* applies equally to strict foreclosure judgments under Connecticut law. Instead, because neither Conn. Gen. Stat. § 49-15(b) nor 11 U.S.C. § 362 applied, Mrs. Tumba received the protection only of 11 U.S.C. § 108(b), which provides for a sixty-day delay following the law day before the equity of redemption period expires. In this case, because the law day was November 12, 2019, the equity of redemption period expired, by operation of 11 U.S.C. § 108(b), on January 13, 2020. After that date, because the equity was not redeemed, title to the property vested in U.S. Bank and neither Mrs. Tumba nor her bankruptcy estate had any further interest in the property.

For these reasons, I conclude that the Bankruptcy Court erred when it denied the motion for relief from the automatic stay on the basis that Mrs. Tumba was a "mortgagor" under § 49-15. As a result, I vacate the Bankruptcy Court's order. Although U.S. Bank asks me to direct the Bankruptcy Court to grant the motion, ECF No. 14 at 15, I decline to do so. Under 11 U.S.C. § 362(d)(2), a court "shall" grant relief from the stay "if (A) the debtor does not have an equity in such property; *and* (B) such property is not necessary to an effective reorganization." (emphasis

added).  The record here contains no discussion of § 362(d)(2)(B).  Because the record is silent as to this issue, I leave it to the Bankruptcy Court to address on remand.

## IV. CONCLUSION

For the reasons stated above, the Bankruptcy Court's order is VACATED and the case is REMANDED to the Bankruptcy Court for further proceedings in accordance with this opinion. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            September 29, 2021